# No. 23-4130

In the

# United States Court of Appeals

## For the Fourth Circuit

———————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

ANTHONY HAWKINS,

*Appellant.*

———————————

On Appeal from the United States District Court
for the District of South Carolina at Greenville
Case No. 6:22-CR-186-2

———————————

## REPLY BRIEF OF APPELLANT

———————————

Alec J. Smith
APPELLATE JUSTICE INITIATIVE
  AT MCGUIREWOODS LLP
77 W. Wacker Drive # 4100
Chicago, IL 60601
T: (312) 849-8138

Gregory J. DuBoff
APPELLATE JUSTICE INITIATIVE
  AT MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1154

Lucas C. Marchant
Mitchell & Bouton LLC
7 Mills Avenue, Box 10285
Greenville, SC 29603

***Counsel for Appellant***

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................... 1

STANDARD OF REVIEW ...................................................... 6

ARGUMENT ......................................................................... 8

I.    The trial court's restriction on cross-examination violated Hawkins's rights under the Confrontation Clause ....................... 8

II.    *Cropp* cannot support the district court's limits on cross-examination. ............................................................... 14

    A.    The Government fails to reconcile *Hoover* and *Cropp* ......... 14

    B.    The district court limited cross-examination even more than in *Cropp* ................................................. 19

III.    The district court's ruling is inconsistent with the original meaning of the Confrontation Clause ........................................ 22

IV.    The district court's ruling contradicts the law in several other jurisdictions ......................................................... 24

V.    The district court's error was not harmless ................................ 25

CONCLUSION ..................................................................... 28

CERTIFICATE OF COMPLIANCE ...................................... 29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alford v. United States,*
    282 U.S. 687 (1931)................................................................................20

*Chambers v. Mississippi,*
    410 U.S. 284 (1973).......................................................................7, 8, 24

*Cooper Indus. v. Leatherman Tool Grp., Inc.,*
    532 U.S. 424 (2001)..................................................................................6

*Crawford v. Washington,*
    541 U.S. 36 (2004)..................................................................................21

*Delaware v. Van Arsdall,*
    475 U.S. 673 (1986).......................................................................1, 4, 7, 25

*Hoover v. Maryland,*
    714 F.2d 301 (4th Cir. 1983).........................2-6, 8-9, 13-18, 20, 22, 25

*Lawson v. FMR, LLC,*
    571 U.S. 429 (2014)................................................................................24

*Melendez v. United States,*
    418 U.S. 120 (1996)................................................................................10

*Melendez-Diaz v. Massachusetts,*
    557 U.S. 305 (2009)................................................................................24

*Reese v. Peters,*
    926 F.2d 668 (7th Cir. 1991)................................................................23

*State v. Brown,*
    399 S.E.2d 593 (S.C. 1991)..................................................................23

*State v. Jackson,*
    233 A.3d 440 (N.J. 2020)......................................................................23

*Stokes v. Stirling,*
   64 F.4th 131 (4th Cir. 2023) ........................................................ 22

*U.S. Bank N.A. v. Vill. at Lakeridge, LLC,*
   138 S. Ct. 960 (2018) .................................................................. 6

*United States v. Ambers,*
   85 F.3d 173 (4th Cir. 1996) .................................................... 12, 13

*United States v. Chandler,*
   326 F.3d 210 (3d Cir. 2003) ...................................................... 11

*United States v. Collins,*
   415 F.3d 304 (4th Cir. 2005) ...................................................... 6

*United States v. Cropp,*
   127 F.3d 354 (4th Cir. 1997) ............................................ 3, 13-20, 23

*United States v. Dimora,*
   843 F. Supp. 2d 799 (N.D. Ohio 2012) ...................................... 14

*United States v. Dorta,*
   783 F.2d 1179 (4th Cir. 1986) ................................................ 11, 12

*United States v. Haymond,*
   139 S. Ct. 2369 (2019) ............................................................ 3, 22

*United States v. Jordan,*
   952 F.3d 160 (4th Cir. 2020) ...................................................... 5

*United States v. Odom,*
   736 F.2d 104 (4th Cir. 1984) ...................................................... 12

*United States v. Pratt,*
   915 F.3d 266 (4th Cir. 2019) ...................................................... 5

*United States v. Rushin,*
   844 F.3d 933 (11th Cir. 2016) .................................................... 23

*United States v. Shamsid-Deen,*
   61 F.4th 935 (11th Cir. 2023) ...................................................... 7

*United States v. Smith*,
   919 F.2d 734, 1990 WL 194516 (4th Cir. 1990) ................................... 2

## Other Authorities

Zachary K. LaFleur,
   *Constitutional Law - United States v. Reid*,
   33 Am. J. Trial Advoc. 431 (2009) ...................................................... 14

## **INTRODUCTION**

The Government's response is damning in its silence. It does not dispute that the district court limited Hawkins's cross-examination of Boyd, the key witness against him. Instead, the Government denies that those restrictions violated the Confrontation Clause because the "permitted" cross-examination was—in the Government's view—"sufficient[]." Resp. 9-10. Yet missing from the Government's response is any *justification* for the limits the district court imposed. *See id.* at 9-13. This gets the constitutional inquiry precisely backwards.

A criminal defendant does not cross-examine the witnesses against him at the indulgence of the state. He does so as of right. Thus, a defendant "states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).

When Boyd testified against Hawkins, he faced a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment. JA313. Boyd also knew that the only way to receive a lighter sentence was if his cooperation was "deemed" by the Government

as "providing substantial assistance." JA316. Despite those overwhelming incentives, the district court prohibited Hawkins from cross-examining Boyd "about the specifics of his reduction" or "the amount of time that he [was] hoping to have reduced." JA57. Yet in its response, the Government disputes neither that this restriction excluded "otherwise appropriate cross-examination," nor that the prohibited questions were "designed to show a prototypical form of bias." *Van Arsdall*, 475 U.S. at 680.

The high standard for limiting cross-examination makes the Government's justification-free approach especially inadequate. Any restriction "must be informed by 'the utmost caution and solicitude for the defendant's Sixth Amendment rights.'" *Hoover v. Maryland*, 714 F.2d 301, 305 (4th Cir. 1983). And when it comes to core concerns like a witness's "bias or self-interest," cross-examination "should be limited only for the most compelling reasons." *United States v. Smith*, 919 F.2d 734 (Table), 1990 WL 194516, at *3 (4th Cir. 1990). The Government offers no reason for the district court's restrictions, much less a compelling one.

As for this Court's precedent, the Government does not dispute that *Hoover* controls. But its argument that *Hoover* supports the district court's ruling ignores what that decision says. In *Hoover*, this Court held that the trial court violated the Confrontation Clause when it "refused to permit" a cooperating witness "to be questioned about the amount of time in prison he thought he was avoiding by testifying." 714 F.2d at 306. The district court committed the same violation by prohibiting Hawkins from questioning Boyd "about the specifics of his reduction, including the amount of time that he [was] hoping to have reduced." JA57.

The Government also fails to mask the irreconcilable conflict between *Hoover* and *Cropp*. In both cases, the trial courts prohibited "quantitative questions . . . about the benefits which witnesses expected to receive for their cooperation." *United States v. Cropp*, 127 F.3d 354, 359 (4th Cir. 1997). *Hoover* judged that a constitutional violation because the likelihood of false testimony "can be viewed as directly correlated with the perceived value of such testimony to the witness." 714 F.2d at 305. That means a defendant is entitled to explore the "concrete details" of what an accomplice thinks he will gain by testifying, including "the amount of time in prison" the witness thinks he is avoiding. *Id.* at 304,

306.  Yet *Cropp* found no constitutional violation because it held that this same cross-examination would provide no more than a "slight additional margin of probative information" about a witness's credibility.  127 F.3d at 359.

On original meaning, the Government's one-sentence response leaves little to address in this reply.  *See* Resp. 16.  Still, the significance of the Government's inability to refute the historical evidence should not be missed.  "[T]he Constitution's guarantees cannot mean less today than they did the day they were adopted."  *United States v. Haymond*, 139 S. Ct. 2369, 2376 (2019).  And the Government does not dispute that "[e]vidence of the Confrontation Clause's original meaning confirms that it protected an accused's right to cross-examine witnesses—particularly accomplices—about the specific benefits they hoped to receive in exchange for their testimony."  Opening Br. 40.  Thus, even were the district court's ruling not already unconstitutional under *Hoover*, the original meaning of the Sixth Amendment would compel the same result.

The Government also does not dispute that "the trial court's ruling . . . contradicts the law in several other jurisdictions."  *Id.* at 54.  To be fair, this silence makes some sense.  The experience in other jurisdictions

undermines any claim the Government *could* make about the need for limits on cross-examination like those imposed by the district court. But because the Government has given no justification at all for limiting Hawkins's cross-examination of Boyd, there is no rationale to undermine.

Finally, the Government fails in its effort to construe the district court's error as harmless. To start, the Government does not dispute that Boyd "was the key to the prosecution case." *Hoover*, 714 F.2d at 306. Yet it cannot cite a single case when unconstitutional restrictions on cross-examination of the prosecution's key witness has been found harmless. Much of the Government's remaining argument merely assumes that the prohibited cross-examination would not have affected Boyd's credibility. But harmless-error analysis requires this Court to "assum[e] that the damaging potential of the cross-examination were full realized." *Van Arsdall*, 475 U.S. at 684. And the Government admits that Hawkins's conviction "turned on whether the jury believed Boyd's *entire testimony*." Resp. 19 (emphasis added). That concession removes any doubt that if the jury had discounted Boyd's testimony, Hawkins could not have been convicted.

## STANDARD OF REVIEW

The Government's standard-of-review argument employs the same "just so" approach seen throughout its brief. It insists that the district court's restriction on cross-examination should be reviewed for abuse of discretion, but it never says why.

It is true that this Court "typically review[s] evidentiary decisions for abuse of discretion." *United States v. Jordan*, 952 F.3d 160, 167 (4th Cir. 2020). But this Court just as consistently "review[s] those that implicate the Confrontation Clause de novo." *Id.*; *see also, e.g.*, *United States v. Pratt*, 915 F.3d 266, 275 (4th Cir. 2019) ("Unlike most evidentiary issues, we review this ruling de novo because it implicates the Confrontation Clause."). Thus, the standard of review turns on whether the district court's ruling "implicate[d] the Confrontation Clause," *Pratt*, 915 F.3d at 275, and the Government does not dispute that it did.

Even were this Court's precedent not so clear, the Government fails to justify the abuse-of-discretion standard. It does not contest that the constitutionality of the district court's ruling "raises a question of law," for which "the appropriate standard of review is de novo." *United States*

*v. Collins*, 415 F.3d 304, 307 (4th Cir. 2005). Neither does the Government dispute that, "[i]n the constitutional realm" especially, "the role of appellate courts . . . favors de novo review." *U.S. Bank N.A. v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967 n.4 (2018).

At bottom, this case raises a constitutional question that is neither "fact-bound," nor "resistan[t] to meaningful generalization." *Cooper Indus. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 444 (2001) (Scalia, J., concurring). Every day, accomplices testify for the Government hoping to be rewarded for their cooperation. Whether defendants have a constitutional right to cross-examine those witnesses "about the amount of time in prison" they think they are "avoiding by testifying" is a question of law, not discretion. *Hoover*, 714 F.2d at 306. And the answer should not depend on which courthouse (or courtroom) a defendant finds himself in. Only de novo review supplies the "clarity, uniformity, and consistency" that this issue demands. *United States v. Shamsid-Deen*, 61 F.4th 935, 944 (11th Cir. 2023).

## ARGUMENT

### I.   The trial court's restriction on cross-examination violated Hawkins's rights under the Confrontation Clause.

The Government's argument comes at the constitutional question backwards.  Rather than defend the district court's restriction on cross-examination, the Government claims only that Hawkins was "allowed . . . to sufficiently probe Boyd's understanding of his agreement with the Government."  Resp. 9.  That argument fails because any unjustified restriction on cross-examination violates the Confrontation Clause.

"[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias."  *Van Arsdall*, 475 U.S. at 680.  As the "otherwise appropriate" language suggests, "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."  *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973).  Still, because cross-examination is central to the "integrity of the fact-finding process," any "competing interest" proffered to limit a defendant's confrontation right must be "closely examined."  *Id.*

And there lies the Government's problem. It does not advance *any* interest to justify the district court's ruling, so "closely examin[ing]" the basis for restricting Hawkins's cross-examination of Boyd is out of the question. On that basis alone, the decision below should be reversed.

The arguments the Government does make all lack merit. It claims repeatedly that Hawkins elicited from Boyd a "clear and complete statement" of "what benefits [Boyd] would receive" for his testimony. Resp. 12. But the Government ignores this Court's precedent on what counts as "clear and complete."

In *Hoover*, "the jury had abundant evidence of Greer's possible bias and motive for testifying." *Hoover*, 714 F.2d at 307 (Hall, J., dissenting). "[J]urors knew that [he] was immunized from the charge of first-degree murder." *Id.* In addition, his "immunity agreement was itself admitted into evidence," which "alerted the jury to the fact that [he] was being granted immunity for other crimes in Maryland and that the state would intercede on Greer's behalf for criminal activity in Pennsylvania." *Id.* Yet this Court *still* ruled that defense counsel had been prevented from exposing Greer's full "understanding of his stake in testimony adverse to Hoover" by the trial court's "refus[al] to permit . . . question[s] about the

amount of time in prison he thought he was avoiding by testifying." *Id.* at 306 (majority opinion).

This Court's reasoning in *Hoover* forecloses the Government's claim that Hawkins's "ability to reveal Boyd's bias" was unaffected by the district court's "restriction on questions about the exact amount of prison time Boyd hoped to avoid" by testifying. Resp. 12. A witness's credibility "can be viewed as directly correlated with the perceived value of such testimony to the witness." *Hoover*, 714 F.2d at 305. But by prohibiting questions "about . . . the amount of time that [Boyd was] hoping to have reduced," JA57, the district court prevented the jury from appreciating the "perceived value" of his testimony, *Hoover*, 714 F.2d at 305.

Indeed, Hawkins suffered worse prejudice than in *Hoover* because of the district court's misleading statement to the jury about Boyd's incentive for testifying. During cross-examination, defense counsel tried to confirm Boyd's understanding that he was dependent on the Government for a reduced sentence. JA166. The district court interjected, telling the jury that the Government could "only make a motion" for a reduced sentence because "sentencing is entirely up to the Court." JA166. As explained in Hawkins's opening brief, this statement

was misleading.  *See* Opening Br. 22-23.  Boyd's sentence was not "entirely up to the Court," JA166, because he was ineligible for a sentence below the ten-year mandatory minimum "*unless* the Government decided he had provided substantial assistance."  Opening Br. 23 (emphasis added).  Thus, the district court gave the jury the false impression that the Government could not affect Boyd's sentencing exposure.

The Government claims that "the district court did not 'mischaracterize' Boyd's dependence on the prosecutor for a lighter sentence," Resp. 16, but its argument proves the opposite.  As the Government acknowledges, the district court confined Hawkins's cross-examination to whether Boyd "expected the Government to proactively seek a lighter sentence on his behalf."  Resp. 16 (emphasis removed).  But when it comes to a witness's motivation, there is a material difference between a recommendation and an authorization.  Boyd did not just hope that the Government would "seek a lighter sentence" for him.  Resp. 16. He *depended* on the Government to "authorize[] . . . a sentence below the statutory minimum."  *Melendez v. United States*, 418 U.S. 120, 127 (1996).  Thus, Boyd's "mere acknowledgment that [he] hoped that the government would move for a lesser sentence did not adequately enable

11

[the] jury to evaluate [his] motive to cooperate." *United States v. Chandler*, 326 F.3d 210, 222 (3d Cir. 2003). And the district court's misleading interjection prevented the jury from "appreciat[ing] the strength of [Boyd's] incentive to provide testimony that was satisfactory to the prosecution." *Id.*

The Government's cited cases also confirm that Hawkins could not develop "a clear and complete statement . . . of what benefits [Boyd] would receive" for his testimony. Resp. 9 (quoting *United States v. Dorta*, 783 F.2d 1179, 1182 (4th Cir. 1986)). In *Dorta*, this Court affirmed as "relevant" an accomplice's "understanding of the total possible sentence he would have faced" without cooperation. *Id.* at 1182 n.6. And the district court there allowed cross-examination about "the total possible sentence" (in years) the witness faced. *Id.* This Court found no Confrontation Clause violation because the only questions the district court excluded were "repetitive." *Id.* Hawkins was permitted nothing like the cross-examination in *Dorta*. The district court prohibited any questions about "the amount of time that [Boyd was] hoping to have reduced," JA57, much less his "total possible sentence," *Dorta*, 783, F.2d

at 1182 n.6. And unlike in *Dorta*, no one claimed that Hawkins's requested cross-examination of Boyd would have been repetitive.[1]

The Government's invocation of *United States v. Ambers*, 85 F.3d 173 (4th Cir. 1996), is similarly off target. The response notes that the defendant there had an "abundant opportunity to explore the motivation of the government witnesses." Resp. 13 (quoting *Ambers*, 85 F.3d at 177). But the Government ignores what that "opportunity" entailed.

In *Ambers*, the district court ruled that it was "proper" for defense counsel to ask cooperating witnesses about the specific penalties they faced. 85 F.3d at 175. So at trial, defense counsel was allowed to question those witnesses "about the nature of their plea agreements, including the minimum and maximum penalties for their offenses." *Id.*; *see also id.* at 176 n.* ("The minimum mandatory and maximum penalties for this offense are ten to life; is that correct?"). The witnesses were even "quizzed . . . about their understanding of the substantial assistance reduction under U.S.S.G. § 5k1.1." *Id.* at 176. "The sole restriction

---

[1] For similar reasons, *United States v. Odom*, 736 F.2d 104, 108 (4th Cir. 1984), does not support the Government's position. That case, like *Dorta*, involved only a restriction on repetitive cross-examination. *Id.* ("Since the witness had already answered the question, there was no error in refusing to allow counsel . . . to repeat the question.").

imposed" related to "a technical analysis of the Guidelines." *Id.* This Court approved that restriction because "explor[ing] the intricacies of the Guidelines scheme on cross-examination might do much to confuse lay jurors and little to enlighten them." *Id.* at 177.

The Government's reliance on *Ambers* is doubly flawed. The district court here prohibited Hawkins from engaging in anything like the cross-examination in *Ambers*. And unlike in *Ambers*, the Government has offered no justification—such as confusion—for the district court's restriction.

## II. *Cropp* cannot support the district court's limits on cross-examination.

### A. The Government fails to reconcile *Hoover* and *Cropp*.

The Government addresses *Cropp* in its response, but it is hard to make out the reason for this discussion. The Government does not dispute that, "[i]n restricting Hawkins's cross-examination of Boyd, the district court apparently relied on [*Cropp*]." Opening Br. 26. Nor does the Government dispute that its own argument in favor of those restrictions "rested almost exclusively on *Cropp*." *Id.* Yet the Government also says nothing to dispute that "*Hoover*, not *Cropp*, is the law in this Circuit." *Id.* at 27. Thus, the Government apparently accepts

14

that *Hoover* provides the governing standard for this case. And for the reasons discussed above and in Hawkins's opening brief, *Hoover* leaves no doubt that the district court's limits on cross-examination were unconstitutional.

In any event, whatever the purpose of the Government's discussion, it fails to defuse the irreconcilable conflict between *Hoover* and *Cropp*. *See* Resp. 13-16.[2] To start, the effort to harmonize those decisions depends on illusory factual distinctions. And the Government does not even try to reconcile the contradictory reasoning that animates the two decisions.

The Government suggests that the different outcomes in *Hoover* and *Cropp* are explained by differences in the scope of cross-examination allowed at trial. That claim withers under scrutiny. If anything, the trial court in *Hoover* allowed more cross-examination than in *Cropp*.

---

[2] The Government accuses Hawkins of "manufactur[ing] an 'irreconcilable' conflict" between *Hoover* and *Cropp*. Resp. 13. Yet the Government does not even acknowledge—much less refute—the other authorities that have recognized the same conflict. *See* Opening Br. 29 (citing *United States v. Dimora*, 843 F. Supp. 2d 799, 843 n.20 (N.D. Ohio 2012) (describing *Hoover* and *Cropp* as an "intra-circuit split") and Zachary K. LaFleur, *Constitutional Law - United States v. Reid*, 33 Am. J. Trial Advoc. 431, 435 n.4 (2009) (describing *Hoover* and *Cropp* as "incongruent opinions" and an "intra-circuit split")).

15

It is true that defense counsel in *Cropp* was allowed to ask the accomplices "whether they faced a 'severe penalty'" for unspecified offenses, and "whether they expected to receive a lesser sentence as a result of the cooperation." 127 F.3d at 358. That hardly distinguishes the case from *Hoover*. In *Hoover,* the jurors knew that Greer was being "*immunized* from the charge of *first-degree murder*" in exchange for his testimony. 714 F.2d at 307 (Hall, J., dissenting) (emphases added). So unless the *Hoover* jurors thought that first-degree murder carried a trifling penalty, they too would have understood that Greer faced a "severe sentence," to say the least.

As for benefits, the *Cropp* jurors learned only that the witnesses expected to receive an unspecified "lesser sentence." 127 F.3d at 358. The *Hoover* jurors, by contrast, knew that Greer was getting off scot free because the reward for his testimony was "immuni[ty] from the charge of first-degree murder." 714 F.2d at 307 (Hall, J., dissenting).

By any measure, the *Hoover* jurors had more information about the accomplice's motivation for testifying than did their counterparts in *Cropp*. Yet this Court found a Confrontation Clause violation in the former case, and not the latter. These incongruous rulings had nothing

16

to do with differences in what jurors knew about the witnesses' bias. They had everything to do with divergent understandings of what the Confrontation Clause guarantees.

At a basic level, *Hoover* and *Cropp* do not even agree on how to evaluate court-imposed limits on cross-examination. *Hoover* recognized that any limitation has to be "informed by 'the utmost caution and solicitude for the defendant's Sixth Amendment rights.'" 714 F.2d at 305. Under that approach, a court looks at the prohibited questions and asks whether their exclusion was justified by a compelling enough interest. *See id.* (listing "attempts to harass, humiliate or annoy" or "endanger the witness' personal safety" as valid grounds for limiting cross-examination). *Cropp* turned this analysis on its head. The Court there presumed that limits on cross-examination were acceptable unless a defendant could prove that the prohibited questions "were *necessary*" to show a witness's bias. *Cropp*, 127 F.3d at 359. And even if a defendant were prohibited from engaging in otherwise appropriate cross-examination, *Cropp* held that no constitutional violation would occur if the jury could otherwise make a "discriminating appraisal" of the witness's bias. 127 F.3d at 359.

17

On substance, *Hoover* explained that a defendant is "constitutionally entitled to explore by cross-examination . . . what the witness understands he . . . will receive" for his testimony. 714 F.2d at 305. That includes "concrete details," like "the amount of time in prison he thought he was avoiding by testifying," because the propensity for false testimony "can be viewed as directly correlated with the perceived value of such testimony to the witness." *Id.* at 303, 305-06. In *Hoover*, it was not enough for the jury to know that Greer was granted immunity from first-degree murder. Defense counsel was still entitled to explore the "concrete benefits [Greer] would receive" by asking: "[H]ow many years in jail do you think you're going to save?" *Id.* at 304 & n.1.

The *Cropp* panel followed none of those principles. It rejected any entitlement to cross-examination on concrete details, holding instead that the district court appropriately barred "any quantitative questions whatsoever about the benefits which witnesses expected to receive for their cooperation." *Cropp*, 127 F.3d at 359. And departing from *Hoover*'s teaching that concrete details are vital to a jury's credibility assessment, *Cropp* held that the "probative value" of that information "was slight." *Id.*

18

The Government's discussion of *Cropp* is notably superficial. It defends *Cropp*'s result, but none of its reasoning. In *Cropp*, the restrictions on cross-examination were justified by the "concern that the jury might 'nullify' its verdict." *Id.* at 358. And the Government cited that concern below when urging the district court to impose the same limits on Hawkins. *See* JA49. But in its response, the Government does not even mention jury nullification. The Government also addresses none of the "major errors" in *Cropp*'s analysis that are outlined in Hawkins's opening brief. *See* Opening Br. 32-39. These include *Cropp*'s unfounded speculation about the risk of jury nullification, its ahistorical approach to what jurors can know about penalties, and its contradictory assumption that sentencing information would be so powerful as to trigger jury nullification but not powerful enough to affect a witness's credibility. *Id.*

The Government's silence speaks for itself. Even were *Cropp* not irreconcilable with *Hoover*, its reasoning is indefensible.

## B. The district court limited cross-examination even more than in *Cropp*.

The Government's response also confirms that the district court limited Hawkins's cross-examination even more than in *Cropp*. The

Government argues that Hawkins's jury was "well aware that Boyd was a cooperator facing severe penalties if he did not provide the Government with incriminating information." Resp. 15 (quoting *Cropp*, 127 F.3d at 359). The record below proves the opposite.

The Government never explains how Hawkins's jury would have known that "Boyd was . . . facing severe penalties." *Id.* The district court instructed Hawkins's counsel to ask only whether Boyd was "hoping to get a reduction in sentence by cooperating." JA57-58. And on cross-examination, Boyd—despite exposure to a ten-year mandatory minimum—would not even admit that he was "facing a lot of time." JA169. Thus, far from the jury learning that Boyd was facing a "severe penalty," *Cropp*, 127 F.3d at 358, it heard only that he was "going to prison," JA169.

The Government suggests that Boyd's misleading answer was of no constitutional moment because Hawkins had an "opportunity" to ask the question. Resp. 16. That argument ignores how dramatically the district court's ruling prevented Hawkins from "plac[ing] the witness in his proper setting." *Alford v. United States*, 282 U.S. 687, 692 (1931). The obvious follow-up to Boyd's dissembling would have been to confront him

with the ten-year mandatory minimum he faced.  But it was "this very question" that Hawkins was prohibited from asking.  *Hoover*, 714 F.2d at 305.

The district court's restriction would have been harmful enough had it simply prevented Hawkins from revealing "the amount of time in prison [Boyd] thought he was avoiding by testifying."  *Id.* at 306.  It made things even worse by allowing Boyd to misrepresent the penalty he was facing.  Thus, not only was the jury left ignorant of Boyd's true incentive to testify against Hawkins, it was led to believe that Boyd was not even "facing a lot of time."  JA169; *see also* JA152-153 (Boyd explaining that he was testifying against Hawkins "of [his] own goodwill" and as "[j]ust a good citizen, a good American doing the right thing").

Compared to *Cropp*, Hawkins's jury also received less information about Boyd's dependence on the Government for a lighter sentence.  In *Cropp*, the jury was "well aware that the witnesses were cooperators facing severe penalties *if* they did not provide the government with incriminating information."  127 F.3d at 359 (emphasis added).  In other words, the *Cropp* jurors knew that the witnesses would receive severe sentences unless they cooperated.  But as the Government acknowledges,

Hawkins could argue only that Boyd "*hope[d]* for a lighter sentence" and "*expected* the Government to proactively seek a lighter sentence on his behalf."  Resp. 16.  That information told the jury that Boyd hoped for some benefit from his testimony, but it obscured the fact that Boyd had to cooperate to have any hope for a reduced sentence.  And as already discussed, the district court guaranteed that this misunderstanding would persist by telling the jury that any leniency request by the Government would not affect Boyd's sentencing exposure.  JA166.

## III.  The district court's ruling is inconsistent with the original meaning of the Confrontation Clause.

As noted in Hawkins's opening brief, "[e]vidence of the Confrontation Clause's original meaning confirms that it protected an accused's right to cross-examine witnesses—particularly accomplices—about the specific benefits they hoped to receive in exchange for their testimony."  Opening Br. 40; *see also id.* at 40-53.  The Government does not dispute the invalidity of any rule that "strays from the original meaning of the Confrontation Clause." *Crawford v. Washington*, 541 U.S. 36, 42 (2004).  Yet it says nothing to challenge the historical evidence Hawkins has marshaled.  Instead, the Government offers a conclusory, one-sentence response that "[t]he trial court's restrictions on cross-

examination were . . . not inconsistent with the original meaning of the Confrontation Clause." Resp. 16. That will not do.

"It is well-established that 'a party's failure to raise or discuss an issue in its appellate brief is to be deemed an abandonment of that issue.'" *Stokes v. Stirling*, 64 F.4th 131, 137 (4th Cir. 2023). Indeed, "[e]ven appellees waive arguments by failing to brief them." *Id.* By not responding to Hawkins's argument on original meaning, the Government has forfeited any challenge to what that history shows.

Forfeiture aside, "the Constitution's guarantees cannot mean less today than they did the day they were adopted." *Haymond*, 139 S. Ct. at 2376. And "[t]he historical record proves that before, at, and after the founding, defendants enjoyed broad latitude in the cross-examination of adverse witnesses, particularly accomplices." Opening Br. 53. The Government cannot avoid the consequences of that history by ignoring the issue. Even if *Hoover* did not render the district court's ruling unconstitutional, the Confrontation Clause's original meaning would demand the same result.

## IV. The district court's ruling contradicts the law in several other jurisdictions.

The Government does not dispute that in many jurisdictions, both state and federal, Hawkins would have been entitled to cross-examine Boyd about "what sentence he faced and what was offered in [his] plea agreement." *State v. Jackson*, 233 A.3d 440, 452 (N.J. 2020). Indeed, in the state courthouse across the street, the Confrontation Clause would have guaranteed Hawkins's opportunity to expose the ten-year "mandatory prison term" Boyd hoped to avoid by testifying. *State v. Brown*, 399 S.E.2d 593, 594 (S.C. 1991).

On its own, this unequal application of the Confrontation Clause is concerning. *See Reese v. Peters*, 926 F.2d 668, 670 (7th Cir. 1991) ("[T]he sixth amendment does not mean one thing in Texas and another in Illinois."). But precedent in other jurisdictions is most immediately relevant for what it shows about the reason often cited for restricting cross-examination.

As in *Cropp*, courts typically justify limits on cross-examination about an accomplice's sentencing benefits as a "proper remed[y] for jury nullification." 127 F.3d at 358; *see also United States v. Rushin*, 844 F.3d 933, 939 (11th Cir. 2016) (same). But if that were a real risk, there would

24

be some evidence of it from the many jurisdictions that permit such questions. Yet the Government claims nothing of the sort. So "in light of the experience in those States that already provide the same or similar protections to defendants, there is little reason to believe that" allowing cross-examination into an accomplice's sentencing exposure "will commence the parade of horribles" that some courts predict. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 328 (2009).

The Sixth Amendment demands that any "competing interest" used to justify restrictions on cross-examination be "closely examined." *Chambers*, 410 U.S. at 295. But "[t]here is scant evidence" that *Cropp*'s concern over jury nullification is "more than hypothetical." *Lawson v. FMR, LLC*, 571 U.S. 429, 452 (2014). Such evidence-free speculation is no basis for infringing on a right so central to the "integrity of the fact-finding process." *Chambers*, 410 U.S. at 295.

## V. The district court's error was not harmless.

The Government cannot meet its burden of establishing that the district court's ruling was harmless beyond a reasonable doubt. At the most basic level, the Government does not dispute that Boyd "was its key witness." Opening Br. 61. Neither does it identify a single case when

unconstitutional limits on the cross-examination of a key witness have been found harmless.

The Government's argument also ignores the process of harmless-error review. This analysis requires the Court to "assum[e] that the damaging potential of the cross-examination were fully realized." *Van Arsdall*, 475 U.S. at 684. The Government claims that, even without the prohibited cross-examination, the jury had "ample reason to doubt Boyd's credibility." Resp. 18. But that argument goes nowhere because the Government admits that the jury necessarily credited Boyd's testimony.

Hawkins was convicted based on a theory of constructive possession, but there was no physical evidence connecting Hawkins to the drugs hidden in Boyd's car. Thus, in the Government's own telling, "[t]he question of constructive possession turned on whether the jury believed Boyd's *entire testimony*." Resp. 19 (emphasis added). That acknowledgment destroys any argument that the district court's error was harmless beyond a reasonable doubt. It it not just that "if the jury doubted [Boyd's] story there would have been little else on which to base a guilty verdict." *Hoover*, 714 F.2d at 306. The Government affirms that,

had the jury not "believed Boyd's entire testimony," there would have been *nothing* else to support Hawkins's conviction.  Resp. 19.

As for the Government's jailhouse informant—Joseph Tessigner—his testimony cannot carry the Government's burden of proving harmlessness beyond a reasonable doubt.  As noted above, the Government does not even suggest that Tessigner's testimony was necessary or sufficient to convict Hawkins.  The verdict "turned on whether the jury believed *Boyd's* entire testimony," not Tessigner's.  Resp. 19 (emphasis added).

The Government also does not dispute that Tessigner had severe credibility issues.  *See* Opening Br. 60 n.10.  And while Tessigner related "details" that Hawkins purportedly shared with him about past criminal activity, the Government presented no other evidence confirming their accuracy.  Resp. 20.  Besides, the "details" Tessigner provided were hardly groundbreaking.  Tessigner testified that Hawkins confessed to transporting drugs on other occasions and to being paid with both drugs and currency.  JA183-184.  It would be easy for *any* informant to make up such generic information, much less a repeat player with "a history of claiming that fellow inmates had confessed to him."  Opening Br. 60

27

(citing JA 190-191).  In short, the record does not even show beyond a reasonable doubt that the jury credited Tessigner's testimony.  And there is ample reason to doubt (including the Government's own assessment) that the jury would have convicted Hawkins based on his testimony alone.

## **CONCLUSION**

The Court should reverse Hawkins's conviction.

Dated:  October 16, 2023            Respectfully submitted,

                                    */s/ Gregory J. DuBoff*
                                    Gregory J. DuBoff
                                    APPELLATE JUSTICE INITIATIVE
                                     AT MCGUIREWOODS LLP
                                    800 East Canal Street
                                    Richmond, Virginia 23219
                                    T: (804) 775-1154
                                    F: (804) 698-2054
                                    gduboff@mcguirewoods.com

                                    Alec J. Smith
                                    APPELLATE JUSTICE INITIATIVE
                                     AT MCGUIREWOODS LLP
                                    77 W. Wacker Drive # 4100
                                    Chicago, IL 60601
                                    T: (804) 775-1154

                                    Lucas C. Marchant
                                    Mitchell & Bouton LLC
                                    7 Mills Avenue, Box 10285
                                    Greenville, SC 29603

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

- This brief contains 5,271 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because:

- This brief has been prepared in a proportionally spaced, 14-point Century Schoolbook font using Microsoft Word.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

*/s/ Gregory J. DuBoff*
Gregory J. DuBoff

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2023, I electronically filed the foregoing brief with the Clerk of this Court using the CM/ECF System, which will also serve counsel of record.

*/s/ Gregory J. DuBoff*
Gregory J. DuBoff